UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOSEPH MARTINEZ,

          Plaintiff,

     v.

SPOKANE COUNTY, et al.,

          Defendants.

No. CV-07-409-FVS

ORDER GRANTING
AND DENYING SUMMARY
JUDGMENT

**THIS MATTER** comes before the Court without oral argument based upon the defendants' motion for summary judgment and their motion to strike an affidavit.  They are represented by James H. Kaufman.  The plaintiff is represented by Douglas D. Phelps.

**BACKGROUND**

Joseph and Mary Martinez live in Spokane County, Washington. Their marriage has been marred by domestic violence.  On more than one occasion, Mrs. Martinez has obtained an order from a State of Washington court prohibiting her husband from contacting her.  Deputy Robert King is employed by the Spokane County Sheriffs Office.  He is familiar with the Martinezes and their troubled marriage.  At some point prior to December 23, 2005, he arrested Mr. Martinez.  The latter possessed a knife at the time of his arrest.

On December 23, 2005, Deputy King learned a warrant existed for Mr. Martinez's arrest.  The warrant had been issued by a judicial

ORDER - 1

officer based upon probable cause to believe Mr. Martinez had committed two offenses:  one offense was to violate the terms of a "protection order"; the other was to possess a dangerous weapon. Deputy King confirmed the validity of the warrant.  Afterward, he and Deputy Robert Stevens drove to the Martinezes' residence.  The deputies saw a man inside the house.  They submit they recognized him as Mr. Martinez.

Mrs. Martinez opened the door.  The deputies explained they were there to arrest her husband.  Mrs. Martinez called to him, but he did not respond.  Mrs. Martinez told the deputies he was upstairs taking a shower.  The deputies were still outside the front door.  Deputy King shouted to Mr. Martinez he had a warrant for his arrest.  Mr. Martinez refused to come downstairs, and began arguing with Deputy King about the validity of the warrant.  The deputies waited a short time at the front door; then they entered the house, went upstairs, and located Mr. Martinez.  The deputies allege he would not submit to arrest until Deputy King pointed his taser at him.  Only then, say the deputies, did Mr. Martinez produce his hands for handcuffing.  However, according to the deputies, Mr. Martinez started to walk away when Deputy King began to apply the handcuffs.  Deputy King says he did not know where Mr. Martinez was going or what his intentions were.  He says he became concerned Mr. Martinez might arm himself or barricade himself in another room.  In order to forestall such contingencies, says Deputy King, he shot Mr. Martinez with his taser.  Mr. Martinez's account of the incident differs in one crucial respect.  Although he

ORDER - 2

admits arguing with the deputies about the warrant's validity, he insists he surrendered peacefully and raised his arms above his head. He alleges Deputy King fired his taser after he had raised his arms and surrendered.

The deputies handcuffed Mr. Martinez and drove him to jail. Deputy King acknowledges Mr. Martinez was very angry. According to Deputy King, Mr. Martinez said he was "a racist" and he "had it out for him." (Affidavit of Robert King at 5.) However, by the time they reached the jail, says Deputy King, Mr. Martinez had calmed down. Indeed, as Deputy King recalls, Mr. Martinez apologized for "giving me a hard time." *Id.* at 6. Mr. Martinez's account differs. He says Deputy King "continued to physically batter me using his hands to strike and/or bind me." (Affidavit of Joseph Martinez at 2.)

On December 26, 2007, Mr. Martinez filed a seven-count complaint in federal court against Spokane County, the Spokane County Sheriff, and Deputy King. He seeks damages under 42 U.S.C. § 1983 and the law of the State of Washington. The Court has original jurisdiction over his federal claims. 28 U.S.C. §§ 1331 and 1343. The Court may exercise supplemental jurisdiction over his state claims. 28 U.S.C. § 1367. The defendants move for summary judgment. Fed.R.Civ.P. 56.

**THE WAHL AFFIDAVIT**

Mr. Martinez opposes the defendants' summary judgment motion. He has submitted an affidavit from a man named John Wahl, who is one his neighbors. Mr. Wahl says he spoke with Deputy Robert King approximately eight and one-half months before the incident that gives

rise to this action.  According to Mr. Wahl, Deputy Robert King made racist statements about Mexicans.  The defendants move to strike the Wahl affidavit on four grounds:  In their opinion, the affidavit is not authenticated.  Fed.R.Evid. 901(a).  The statements Mr. Wahl attributes to Deputy King are hearsay.  Fed.R.Evid. 801.  The statements are irrelevant, Fed.R.Evid. 401, and their probative value is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403.  Mr. Martinez has not responded to the defendants' motion to strike the Wahl affidavit.  His failure to respond constitutes consent to the relief requested.  Local Rule 7.1(h)(5). The defendants' motion to strike the Wahl affidavit is granted.

**ENTRY/SEIZURE**

The defendants have submitted a copy of the warrant the deputies relied upon to arrest Mr. Martinez on December 23, 2005.  The warrant appears to be valid, and Mr. Martinez has offered no evidence to the contrary.  Thus, a rational jury would be compelled to find the deputies possessed a valid warrant for the arrest of Mr. Martinez when they drove to his residence.  The deputies allege they saw Mr. Martinez, whom they say they recognized, inside the house as they approached the front door.  Mr. Martinez has offered no evidence contradicting the deputies' testimony.  Consequently, a rational jury would be compelled to find they knew he was inside the house when Mrs. Martinez opened the door.  Under the Fourth Amendment, "an arrest warrant founded on probable cause implicitly carries within it the limited authority to enter a dwelling in which the suspect lives when

there is reason to believe the suspect is within." *United States v. Gooch*, 506 F.3d 1156, 1158 (9th Cir.2007) (internal punctuation and citation omitted), *cert. denied*, --- U.S. ----, 128 S.Ct. 1922, 170 L.Ed.782 (2008).  A misdemeanor warrant is no less authoritative than a felony warrant.  *Id.* at 1159.  Since the deputies were armed with a valid arrest warrant, and since they knew Mr. Martinez was inside his house, they did not violate the Fourth Amendment by entering his house and arresting him.  His unlawful entry and unlawful arrest claims are dismissed.

**USE OF FORCE**

"*[A]ll* claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (emphasis in original).  Whether a law enforcement officer's use of force was "'objectively reasonable'" depends upon the totality of the facts and circumstances confronting him.  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.) (*en banc*) (quoting *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872), *cert. denied*, 545 U.S. 1128, 125 S.Ct. 2938, 162 L.Ed.2d 866 (2005).  Mr. Martinez alleges he surrendered and raised his hands above his head before Deputy King fired his taser.  The deputies dispute Mr. Martinez's account of the incident.  Nevertheless, if a rational jury credits his account (and it could), the jury could find Deputy King acted in an objectively unreasonable manner by using his

taser to subdue a person who was not resisting arrest.  *See Brown v. City of Golden Valley*, 574 F.3d 491, 496-98 (8th Cir.2009); *Parker v. Gerrish*, 547 F.3d 1, 9-11 (1st Cir.2008); *Casey v. City of Federal Heights*, 509 F.3d 1278, 1282-83 (10th Cir.2007).  In sum, a genuine issue of material fact exists with respect to whether Deputy King violated the Fourth Amendment by shooting Mr. Martinez with his taser.

The fact Deputy King may have violated the Constitution does not mean he can be held liable for damages under 42 U.S.C. § 1983.  He is entitled to qualified immunity unless his use of a taser on December 23, 2005, violated clearly established law.  *See Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").  Deputy King has not addressed this issue.  *See Brosseau v. Haugen*, 543 U.S. 194, 199-201, 125 S.Ct. 596, 599-600, 160 L.Ed.2d 583 (2004) (*per curiam*) (demonstrating how to determine whether conduct violated clearly established law).  Accordingly, he is not entitled to qualified immunity with respect to his use of his taser.

There is a second part to Mr. Martinez's excessive force claim. He alleges Deputy King assaulted him after they arrived at the jail. Deputy King has submitted an affidavit describing his actions and denying any wrongdoing.  The evidence presented by Deputy King is sufficient to carry his burden of production under Rule 56.  *See*

ORDER - 6

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies*, Inc., 210 F.3d 1099, 1105 (9th Cir.2000). Accordingly, Mr. Martinez must produce evidence from which a rational jury could find for him on this part of his excessive force claim. *See id.* The only evidence he has presented is the following statement, "Deputy King continued to physically batter me using his hands to strike and/or bind me." (Martinez affidavit at 2.) Based upon this lone statement, a rational jury would be unable to determine what Deputy King did to Mr. Martinez at the jail, much less that Deputy King behaved in an objectively unreasonable manner under the circumstances. As a result, this part of Mr. Martinez's excessive force claim fails. *See FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir.2009) ("A non-movant's bald assertions or a mere scintilla of evidence are both insufficient to withstand summary judgment."). Deputy King is entitled to summary judgment with respect to Mr. Martinez' allegation he assaulted him at the jail.

**"DUE PROCESS"**

Mr. Martinez seems to be alleging Deputy King's initial decision to arrest him and his subsequent decision to shoot him with his taser were motivated by racial animus toward persons of Mexican descent. Mr. Martinez claims Deputy King's conduct deprived him of liberty without due process of law in violation of the Fifth and Fourteenth Amendments. Mr. Martinez's due process claim faces two obstacles. First, while the Constitution prohibits a state law enforcement officer from either arresting a person or employing force against him based upon his race, an arrestee must seek redress under the Equal

ORDER - 7

Protection Clause of the Fourteenth Amendment, not the Due Process Clauses of the Fifth and Fourteenth Amendments. *Cf. Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) (discussing a selective enforcement claim).[1]  Second, even if the Court were to allow Mr. Martinez to amend his complaint to allege a violation of the Fourteenth Amendment's Equal Protection Clause, he must, at a minimum, prove Deputy King's decisions were motivated by racial animus. *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948-49 (9th Cir.2003) (in order to avoid summary judgment on an equal protection claim, an arrestee "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated" (internal punctuation and citation omitted)).[2]  Without the Wahl affidavit, there is no evidence of racial animus whatsoever.  Deputy King is entitled to summary judgment on Mr. Martinez's "due process" claim.

---

[1]Were Deputy King a federal law enforcement officer, Mr. Martinez arguably could bring an action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging a violation of the equal protection component of the Due Process Clause of the Fifth Amendment. *See Ashcroft v. Iqbal*, 556 U.S. ----, ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) (citing *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)).

[2]It may be necessary for a person in Mr. Martinez's position to prove both a discriminatory motive (racial animus) and a discriminatory effect (similarly situated persons were not arrested). *See Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir.2003).

ORDER - 8

The result would be the same even if the Court denied the defendants' motion to strike the Wahl affidavit.  Typically, when a jury issue exists in an equal protection case, it is because the arresting officer says or does something at the time of the seizure from which a rational jury could infer discriminatory motive.  For example, in *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166 (10th Cir.2003), Jimmie Marshall alleged he was stopped by a police officer on account of his race.  The district court granted summary judgment.  The Tenth Circuit reversed:

> The record . . . contains evidence . . . that Mr. Marshall did not commit the traffic violation for which he was initially stopped, that Officer Porter ascertained Mr. Marshall's race before initiating the stop, that he made repeated accusations that Mr. Marshall was on crack with no apparent basis, that he made an apparently unnecessary note of Marshall's race, and that his account of the events changed dramatically between the date of the incident and the date of his affidavit.  Other than to insist that Mr. Marshall committed the traffic violation and thus that there was probable cause for the stop and the arrest, the Defendants offer no nondiscriminatory explanation for these aspects of Officer Porter's conduct in this case.

345 F.3d at 1170.  Here, unlike the police officer described above, Deputy King neither did nor said anything on December 23rd indicating he was motivated by racial animus.  To begin with, he did not make any derogatory comments to Mr. Martinez.  *Cf. Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir.1987) (police officers allegedly called the plaintiff "nigger" and "coon").  Nor did the deputies arrest Mr. Martinez based upon their own initiative.  Rather, they went to his house to execute an arrest warrant that had been issued by

ORDER - 9

a judicial officer; a warrant she had issued based upon probable cause
to believe he had both failed to comply with a court order and
possessed a dangerous weapon.  Both offenses are serious matters;
especially against a backdrop of domestic violence.  Thus, the
deputies had an objectively valid reason for contacting Mr. Martinez.
Finally, there is largely undisputed evidence Mr. Martinez would not
comply with the deputies' instructions until Deputy King threatened to
shoot him with his taser.  Mr. Martinez acknowledges he refused to
come to the front door when the deputies informed him they had a
warrant for his arrest.  Instead, as he admits, he remained upstairs
and argued with them; forcing them to enter his house in order to
apprehend him.  The fact he reluctantly submitted to arrest tends to
support their contention Deputy King had to threaten him with his
taser in order to obtain his cooperation.  Mr. Martinez appears to
concede the point.  Why else does he say he raised his arms above his
head unless he was facing Deputy King's taser?  Whether he actually
submitted to arrest thereafter and whether Deputy King ultimately was
justified in shooting him are separate factual issues; ones the jury
will have to resolve.  Nevertheless, the deputies have a
nondiscriminatory explanation for each step they took during the
course of the arrest, and their explanations are supported by
substantial evidence.  By contrast, the only potential evidence of
discriminatory motive is Mr. Wahl's account of his conversation with
Deputy King.  Accusations such as Mr. Wahl's are easy to make; very
difficult to rebut unless a third person overhears the conversation.

ORDER - 10

Even if one accepts Mr. Wahl's account at face value, there is no evidence of other discriminatory statements or behavior on Deputy King's part.  At most, then, his alleged statements are isolated statements.  Furthermore, over eight months elapsed between his alleged statements and the incident giving rise to this action.  In view of the preceding circumstances, Mr. Wahl's affidavit is insufficient to create a jury issue with respect to discriminatory motive even if the Court were to deny the defendants' motion to strike it.

**SPOKANE COUNTY/SPOKANE COUNTY SHERIFF**

Broadly speaking, there are two ways Mr. Martinez may recover damages from Spokane County under § 1983.  On the one hand, he can prove the County violated his right to be free from excessive force by adopting a policy, or adhering to a custom, that caused the alleged constitutional violation.  *See, e.g., Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978).  On the other hand, he can prove the County was deliberately indifferent to an obvious risk he would be subjected to excessive force by its deputies; an indifference that fairly may be characterized as a policy on the County's part.  *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989) (hereinafter "*Canton*").  Mr. Martinez has not discussed either path to liability.  Instead, he has contented himself to say, "[I]t would appear based on the discovery submitted by the defendant that the Spokane County Sheriff's Officer was aware, via prior

incidents, of Deputy King's tendency toward violence." (Plaintiff's Response at 3.) Despite making this assertion, Mr. Martinez has not presented any evidence indicating a tendency toward violence on Deputy King's part. Nor, for that matter, has Mr. Martinez presented any evidence indicating Deputy King's superiors were aware of his alleged tendency. All the Court has before it is a conclusory allegation, and a conclusory allegation is not enough to avoid summary judgment. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir.2003). Spokane County is entitled to summary judgment; so is Spokane Country Sheriff Ozzie Knezovich. As he points out, he was not the Sheriff of Spokane County on December 23, 2005.

**ASSAULT/BATTERY/FALSE ARREST/FALSE IMPRISONMENT**

Mr. Martinez seeks damages under the law of the State of Washington for the torts of assault, battery, false arrest, and false imprisonment. He knew the factual predicate for each cause of action on December 23, 2005. Thus, each cause of action accrued on that date. *See Beard v. King County*, 76 Wn. App. 863, 867, 889 P.2d 501 (1995) ("The discovery rule provides that a cause of action does not accrue until an injured party knows, or in the exercise of due diligence should have discovered, the factual bases of the cause of action."). The statute of limitations for each of the torts listed above is two years. RCW 4.16.100(1). Mr. Martinez did not file the instant action until December 26, 2007. By then, the statute of limitations had expired. Consequently, his tort claims for assault, battery, false arrest, and false imprisonment are time-barred. They

ORDER - 12

are dismissed.

**OUTRAGE**

Mr. Martinez seeks damages under Washington law for the tort of outrage, *i.e.*, intentional infliction of emotional distress.  *Cf. Kloepfel v. Bokor*, 149 Wn. 2d 192, 193 n.1, 66 P.3d 630 (2003) (the words "'[o]utrage' and 'intentional infliction of emotional distress' are synonyms for the same tort").  Mr. Martinez must prove three elements in order to recover:  "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress."  *Id.* at 195.  He has not attempted to identify evidence in the record from which a rational jury could find all of the elements listed above.  For example, while he alleges he suffered minor burns as a result of the taser, he has offered no evidence he suffered severe emotional distress.  As a result, Deputy King is entitled to summary judgment on Mr. Martinez's outrage claim.

**CONCLUSION**

The Court has dismissed all of the defendants save Deputy King, and all of the claims against Deputy King save one.  Thus, a single issue remains for trial.  It is whether Deputy King acted in an objectively unreasonable manner in violation of the Fourth Amendment by shooting Mr. Martinez with his taser on December 23, 2005.

**IT IS HEREBY ORDERED:**

1. The Court grants the defendants' motion to strike (**Ct. Rec. 29**).

ORDER - 13

2. The Court denies in part and grants in part the defendants' motion for summary judgment (**Ct. Rec. 18**):

(a) the Court dismisses Mr. Martinez's claims against Deputy King for unlawful entry and unlawful arrest;

(b) the Court denies Deputy King's request for qualified immunity with respect to his decision to shoot Mr. Martinez with a taser;

(c) the Court dismisses Mr. Martinez's excessive force claim against Deputy King to the extent he alleges Deputy King behaved in an objectively unreasonable manner at the jail;

(d) the Court dismisses Mr. Martinez's "due process" claim;

(e) the Court dismisses Mr. Martinez's claims against Spokane County and Spokane County Sheriff Ozzie Knezovich; and

(f) the Court dismisses Mr. Martinez's state law claims.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this __22nd__ day of September, 2009.

                    ____s/ Fred Van Sickle_____
                         Fred Van Sickle
                  Senior United States District Judge

ORDER - 14